1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SALVADOR J. LLAMAS,                    )    No. 1:16-CV-3012-LRS
                                       )
            Plaintiff,                 )    **ORDER GRANTING**
                                       )    **PLAINTIFF'S MOTION FOR**
      vs.                              )    **JUDGMENT,** *INTER ALIA*
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social          )
Security,                              )
                                       )
            Defendant.                 )
_____)

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment
(ECF No. 15) and the Defendant's Motion For Summary Judgment (ECF No. 16).

## JURISDICTION

Salvador J. Llamas, Plaintiff, applied for Title II Disability Insurance benefits
(DIB) and Title XVI Supplemental Security Income benefits (SSI) on November 28,
2011. The applications were denied initially and on reconsideration. Plaintiff timely
requested a hearing which was held on March 18, 2014 before Administrative Law
Judge (ALJ) Glenn Meyers. Plaintiff testified at the hearing, as did Vocational Expert
(VE) Trevor Duncan. On April 11, 2014, the ALJ issued a decision finding the
Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's
decision, making that decision the Commissioner's final decision subject to judicial
review. The Commissioner's final decision is appealable to district court pursuant
to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 52 years old. He has past relevant work experience as a material handler and as a farm worker. Plaintiff alleges disability since October 1, 2011, on which date he was 49 years old. At the hearing, Plaintiff requested a closed period of disability from October 1, 2011 until February 10, 2013.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) evaluating the medical opinions of record; 2) discounting Plaintiff's credibility; and 3) finding that Plaintiff's mental impairments are not "severe."

## DISCUSSION

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id.*

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 4**

1  **ALJ'S FINDINGS**

2      The ALJ found the following: 1) Plaintiff had a "severe" medical impairment,

3  that being lymphoma, during the alleged closed period of disability; 2) Plaintiff's

4  lymphoma was not an impairment that met or equaled any of the impairments listed

5  in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff had the residual functional capacity

6  (RFC) during the alleged closed period of disability to perform the full range of light

7  work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a); 4)  Plaintiff's RFC did

8  not allow him to perform his past relevant work during the alleged closed period of

9  disability; but (5) the Medical-Vocational Guidelines ("grids"), Rules 202.14 and

10  202.21, directed a finding of "not disabled" for someone of Plaintiff's age, education,

11  work experience and RFC, indicating there were a significant number of jobs in the

12  national economy which the Plaintiff was capable of performing during the alleged

13  closed period of disability.  Accordingly, the ALJ concluded the Plaintiff was not

14  disabled during that period of time.

15

16  **PHYSICIAN OPINIONS/CREDIBILITY**

17      It is settled law in the Ninth Circuit that in a disability proceeding, the opinion

18  of a licensed treating or examining physician or psychologist is given special weight

19  because of his/her familiarity with the claimant and his/her condition.  If the treating

20  or examining physician's or psychologist's opinion is not contradicted, it can be

21  rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725

22  (9th Cir. 1998); *Lester  v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If contradicted, the

23  ALJ may reject the opinion if specific, legitimate reasons that are supported by

24  substantial evidence are given. *Id*.  "[W]hen evaluating conflicting medical opinions,

25  an ALJ need not accept  the opinion of a doctor if that opinion is brief, conclusory,

26  and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211,

27  1216 (9th Cir. 2005).

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

1    It appears Plaintiff was first seen by Carolyn Wild, M.D., in early November
2    2011. In a "Discharge Summary" signed by her on November 16, 2011, she noted
3    that Plaintiff "had 2 months of swelling in his tongue with pain as well as left ear
4    pain." (AR at p. 315). A transoral biopsy of the large tongue base mass on
5    November 2, 2011 revealed the presence of large B-cell lymphoma. (*Id*.).
6    Chemotherapy was started promptly. (*Id*.). Dr. Wild noted she was planning to do
7    3 to 4 months of chemotherapy to be followed by radiation treatment. (*Id*.). She also
8    noted that Plaintiff was "unlikely to be able to work for the next 6 months due to his
9    intense therapy." (AR at p. 316).

10    In a Washington Department of Social and Health Services (DSHS) form she
11    completed on November 18, 2011, Dr. Wild reiterated that Plaintiff's condition was
12    expected to impair his work function for six months. (AR at p. 457). While she
13    checked a box indicating Plaintiff could "sit for most of the day" and engage in
14    "walking or standing for brief periods," she also checked a box indicating it was not
15    appropriate for Plaintiff to participate in training or employment activities at this
16    time. (AR at pp. 457-58). Dr. Wild rated Plaintiff's lymphoma as "severe," meaning
17    the "[i]nability to perform one or more basic work-related activities." (AR at p. 464).
18    She indicated that the affected work activities included sitting, standing, walking,
19    lifting, handling and carrying. (*Id*.). She further indicated that Plaintiff had restricted
20    mobility, agility or flexibility in the following areas: balancing, bending, climbing,
21    crouching, handling, kneeling, pulling, pushing, reaching, sitting and stooping. (*Id*.).
22    She opined that because of "severe weakness, fatigue [and] poor stamina," Plaintiff
23    was unable to work. (*Id*.).

24    On January 9, 2012, Dr. Wild assigned Plaintiff a score of "1" on the Eastern
25    Cooperative Oncology Group (ECOG) Performance Scale which equates to ""[n]o
26    physically strenuous activity, but ambulatory and able to carry out light or sedentary
27    work (e.g. office work, light house work)." (AR at p. 389). She noted that Plaintiff

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

had undergone two cycles of chemotherapy, was scheduled for a third, and that his radiation treatment was likely to begin in February 2012.  (*Id*.).  She also noted that he had applied for disability because "he has intense treatment planned" and furthermore, his "ongoing pain and fatigue . . . will make it very difficult to work for the next 6 months."  (AR at p. 390).  In a report dated January 30, 2012, Dr. Wild repeated her ECOG Performance Scale Score of "1" and noted that Plaintiff wanted to transfer his medical oncology care from Tacoma to Yakima and therefore, he would be referred for radiation treatment in Yakima.  (AR at p. 408).

   Plaintiff was first seen by Cheryl Davison, M.D., a radiation oncologist at Northstar Lodge in Yakima, for consultation on February 15, 2012. (AR at pp. 427-29).  A March 7, 2012 "Progress Note" from Yakima Valley Farm Workers Clinic confirms that Plaintiff's chemotherapy in Tacoma ended in February and that he was now being followed by Dr. Davison for radiation treatment.  (AR at p. 419).

   A May 3, 2012 report by Dr. Davison indicates Plaintiff was seen in February "to consider consolidative radiotherapy for areas of initial bulk disease," but because he needed his teeth extracted and "some missed appointments," he returned on May 3, 2012, "somewhat later than expected."  (AR at p. 424).  She noted that Plaintiff's "teeth were in poor repair, and he needed dental extractions prior to initiation of radiotherapy which unfortunately resulted in scheduling difficulties and a delay in returning for radiotherapy."  (AR at p. 425).

   It appears Plaintiff received radiation treatment from May 21 to June 18, 2012. (AR at p. 445).  On August 4, 2012, Dr. Davision indicated she had requested a follow up for mid-August with the medical oncologist and a follow up with her in four months, if not sooner.  (*Id*.).

   On November 2, 2012, Plaintiff was seen by Goldy Bansal, M.D., a  medical oncologist at Washington Hematology-Oncology, for a "scan followup."  A CT scan of Plaintiff's neck and chest done the previous week (October 23, 2012) did not

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

"show any evidence of disease recurrence." (AR at p. 449). Plaintiff's ECOG Performance Status was scored at "1." (AR at p. 450).

On January 7, 2013, Plaintiff returned to Dr. Davison for a followup appointment. He was "feeling much better generally" and "no longer experiencing pain with reference to history of malignancy or treatment." (AR at p. 508). Dr. Davison's impression was that Plaintiff was "clinically doing well, without obvious evidence of persistent or recurrent disease." (*Id.*).

In his decision, the ALJ found that Plaintiff "was limited to sedentary exertion for the period during which he was undergoing cancer treatment and for a short time thereafter; however, this lasted less than 12 months before the claimant became capable of light exertion." (AR at p. 26). He found this conclusion was "generally consistent with the opinion of Dr. Wild, which I have assigned significant weight." (*Id.*).

There is not substantial evidence in the record supporting the conclusion that Plaintiff was capable of sedentary exertion while he was undergoing cancer treatment and for a short time thereafter. Dr. Wild certainly did not explicitly opine that Plaintiff was capable of sedentary exertion, as defined by Social Security regulations[1], within 12 months after his diagnosis and treatment, and it is not reasonable to infer based on anything she stated, that she thought Plaintiff was capable of such exertion within that time period. The ECOG Scale of Performance Status is a measurement of how cancer impacts a patient's daily living abilities. It was developed by the

---

[1] Pursuant to 20 C.F.R. §§ 404.1567(a) and 416.967(a), sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, walking and standing are required "occasionally."

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

Eastern Cooperative Oncology Group, now part of the ECOG-ACRIN Cancer Research Group, and published in 1982. See http://ecog-agrin.org/resources/ecog-performance-status . There is nothing to suggest that the "work of a light or sedentary nature" referred to in an ECOG Performance Status Grade of "1" equates to the ability to meet all of the exertional requirements of **substantial gainful activity** sedentary work as defined in the Social Security regulations.[2]

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9ᵗ. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9ᵗʰ Cir. 2014).

One of the reasons the ALJ stated for discounting Plaintiff's credibility regarding alleged limitations from lymphoma and treatment thereof was that after he finished radiation treatment in June 2012, he "did not return for oncology follow up until October, eight months after his last oncology appointment . . . ." (AR at p. 25). The record does not support this statement. It is true that Plaintiff did not see Dr. Bansal for a period of approximately eight months between February and October 2012, but this was because he was referred to Dr. Davision for radiation treatment in the interim. (AR at p. 452). As set forth above, Plaintiff saw Dr. Davison on a number of occasions between February and August 2012, prior to being seen again by Dr. Bansal in October 2012. (AR at pp. 434-444; 449-454).

///

---

[2] "Substantial gainful activity" means work that (a) involves doing significant and productive physical or mental duties and (b) is done (or) intended for pay or profit. 20 C.F.R. §§ 404.1510 and 416.910.

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 9**

The ALJ also pointed to evidence in the record of Plaintiff abusing prescription narcotics and using illegal substances  (AR at p. 24), but this is not a clear and convincing reason for discounting Plaintiff's credibility.  Although in January 2012, Dr. Wild declined to refill Plaintiff's oxycontin because he had been taking it "inappropriately" (AR at p. 390), it is clear that this in no way altered Dr. Wild's opinion about Plaintiff's exertional capacity and ability to work.  His admission of methamphetamine use to the pain management doctor, Daniel M. Kwon, M.D.,at North Star Lodge in Yakima, and Dr. Kwon's observation that Plaintiff was taking more oxycodone than he probably should (AR at p. 417), are likewise not clear and convincing reasons to discount Plaintiff's credibility considering the diagnosis of lymphoma, the treatment for the same, and Dr. Wild's opinion about Plaintiff's exertional capacity and his ability to work.  There is no indication in the record that Plaintiff tried to hide his use of methamphetamine or his abuse of prescription narcotics.  There is no indication he was untruthful about these things.

If the ALJ actually intended to reject the opinion of Dr. Wild, Plaintiff's treating physician, he did not offer clear and convincing reasons for doing so. Plaintiff did not do or fail to do anything contrary to the limitations opined by Dr. Wild.  The ALJ did not offer clear and convincing reasons to discount Plaintiff's credibility about limitations arising from his lymphoma and treatment of the same. Accordingly, as discussed *infra*, Plaintiff was disabled for a period of at least twelve months as a result of his lymphoma.

**SEVERE IMPAIRMENT**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

1   It must be established by medical evidence consisting of signs, symptoms, and

2   laboratory findings, not just the claimant's statement of symptoms.  20 C.F.R. §§

3   404.1508 and 416.908.

4       Step two is a *de minimis* inquiry designed to weed out nonmeritorious claims

5   at an early stage in the sequential evaluation process.  *Smolen v. Chater*, 80 F.3d

6   1273, 1290 (9th Cir. 1996), citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)

7   ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless

8   claims").  "[O]nly those claimants with slight abnormalities that do not significantly

9   limit any basic work activity can be denied benefits" at step two.  *Bowen*, 482 U.S.

10  at 158 (concurring opinion).  "Basic work activities" are the abilities and aptitudes to

11  do most jobs, including:  1) physical functions such as walking, standing, sitting,

12  lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing,

13  hearing, and speaking; 3) understanding, carrying out, and remembering simple

14  instructions; 4) use of judgment; 5) responding appropriately to supervision, co-

15  workers and usual work situations; and 6) dealing with changes in a routine work

16  setting.  20 C.F.R. §§ 404.1521(b) and 416.921(b).

17      The Commissioner has stated that "[i]f an adjudicator is unable to determine

18  clearly the effect of an impairment or combination of impairments on the individual's

19  ability to do basic work activities, the sequential evaluation should not end with the

20  not severe evaluation step."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005),

21  citing S.S.R. No. 85-28 (1985).  An ALJ may find that a claimant lacks a medically

22  severe impairment or combination of impairments only when his conclusion is

23  "clearly established by medical evidence."  *Id*.

24      Here, the ALJ did not find that Plaintiff had a "severe" mental impairment,

25  reasoning as follows:

26         While the claimant has been diagnosed with mental health
    conditions, these appear to be related to his physical impairment

27         [Citation omitted].  He received no formal mental health
    treatment, as treatment was limited to prescriptions, primarily

28

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 11**

1   benzodiazepines, written by various providers. Further, later
2   oncology notes indicate no complaints of anxiety or depression.
    The claimant testified that he had mood problems and, at times,
3   wanted to "give up." However, he no longer experienced
    these symptoms. There is also no indication that the claimant
4   pursued mental health treatment after his oncology treatment
    ended either.

5   I note that the State agency medical consultant, Beth Fitterer,
    Ph.D., opined that the claimant's mental conditions caused
6   limitations; however, her opinion was rendered in May 2012,
    well before the claimant's completion of chemotherapy and
7   radiation treatment. [Citation omitted]. She also did not have
    a chance to review the rest of the record, which included no
8   treatment for mental health complaints following remission
    of his cancer. For these reasons, I did not find this opinion
9   persuasive and assigned it minimal weight.

10  (AR at p. 23).

11      The medical evidence in the record does not "clearly establish" that Plaintiff

12  did not suffer from a "severe" mental impairment for a twelve month period. There

13  is not a "total absence of objective evidence" of a "severe" mental health impairment

14  lasting for that period of time. *Webb*, 433 F.3d at 687. On April 5, 2012, Plaintiff

15  underwent a psychological evaluation by Paul L. Schneider, Ph.D., as part of

16  interdisciplinary treatment for chronic pain. Dr. Schneider diagnosed Plaintiff with

17  "[p]ain disorder associated with both psychological factors and general medical

18  condition" and with "[a]djustment disorder with mixed anxiety and depressed mood."

19  (AR at p. 412). Dr. Schneider noted that Plaintiff had experienced "great" anxiety

20  because of his lymphoma diagnosis and the resulting treatment, and that he had been

21  prescribed lorazepam for the anxiety. (AR at p. 411). Dr. Schneider thought it would

22  be a good idea to get Plaintiff off the lorazepam and on an antidepressant that would

23  be helpful with pain, depression and anxiety. (*Id*.). On or about the same date as Dr.

24  Schneider's evaluation, a change was made to Plaintiff's medication so that his

25  lorazepam dosage was decreased and he was started on venlafaxine, an

26  antidepressant. (AR at p. 414).

27  ///

28

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 12**

Based on her review of the record, Dr. Fitterer found that Plaintiff had medically determinable impairments, including somatoform and affective disorders which were "severe," causing "mild" restrictions in activities of daily living, and "moderate" difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (AR at pp. 105-06).

Contrary to the ALJ's statement, the Plaintiff did receive mental health treatment while he was undergoing treatment for lymphoma. He was prescribed an antidepressant for his anxiety and depression. Furthermore, the fact later oncology notes do not indicate any complaints of anxiety and depression does not constitute substantial evidence that Plaintiff did not have a "severe" mental impairment for a period of twelve months which commenced upon his learning of his diagnosis of lymphoma and lasted through its remission.

In any event, even if Plaintiff did not have a "severe" mental impairment, he did have a "severe" physical impairment lasting at least twelve months in duration which rendered him "disabled," as discussed *infra*.

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Id*., citing 42 U.S.C. §405(g).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

1    Three elements must be satisfied in order to justify such a remand.  The first element

2    is whether the "ALJ has failed to provide legally sufficient reasons for rejecting

3    evidence, whether claimant testimony or medical opinion."  *Id.* at 1100, quoting

4    *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  If the ALJ has so erred, the

5    second element is whether there are "outstanding issues that must be resolved before

6    a determination of disability can be made," and whether further administrative

7    proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882,

8    887 (9th Cir. 2004).  "Where there is conflicting evidence, and not all essential factual

9    issues have been resolved, a remand for an award of benefits is inappropriate."  *Id*.

10   Finally, if it is concluded that no outstanding issues remain and further proceedings

11   would not be useful, the court may find the relevant testimony credible as a matter of

12   law and then determine whether the record, taken as a whole, leaves "not the slightest

13   uncertainty as to the outcome of [the] proceedings."  *Id*., quoting *NLRB v. Wyman-*

14   *Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).  Where all three elements are satisfied-

15   ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are

16   no outstanding issues that must be resolved, and there is no question the claimant is

17   disabled- the court has discretion to depart from the ordinary remand rule and remand

18   for an immediate award of benefits.  *Id*.  But even when those "rare circumstances"

19   exist, "[t]he decision whether to remand a case for additional evidence or simply to

20   award benefits is in [the court's] discretion."  *Id*. at 1102, quoting *Swenson v.*

21   *Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

22        Here, the three elements for an award of immediate benefits are satisfied.  The

23   ALJ failed to provide legally sufficient reasons for rejecting evidence, whether

24   claimant testimony or medical opinion; no outstanding issues remain to be resolved

25   before a determination of disability can be made; further administrative proceedings

26   would not be useful; and the record, taken as a whole, leaves not the slightest

27   uncertainty as to the outcome of the proceedings.

28

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 14**

1    Plaintiff was disabled for in excess of twelve months from October 1, 2011,

2    when he first started experiencing pain from what was subsequently determined to be

3    lymphoma, to December 31, 2012.  Dr. Wild indicated that Plaintiff was "unlikely to

4    be able to work for the next 6 months due to his intense therapy."  Radiation therapy

5    was not completed until June 18, 2012  (AR at p. 316).  Approximately six months

6    later, on January 7, 2013, Dr. Davison noted that Plaintiff was doing well, without

7    evidence of persistent or recurrent disease, confirming what Dr. Bansal had reported

8    on November 2, 2012.  The Plaintiff reported to Dr. Davision that he was feeling

9    much better and no longer experiencing pain.[3]

10    There is not substantial evidence in the record supporting a conclusion that

11    Plaintiff had the residual functional capacity (RFC) during the alleged closed period

12    of disability to perform the full range of light work as defined in 20 C.F.R. §§

13    404.1567(a) and 416.967(a).  Dr. Wild's opinion does not support a conclusion that

14    Plaintiff had the RFC to perform a full range of sedentary work during this period, but

15    even if it did, it appears the Medical-Vocational Guidelines, Rule 201.14, would

16    dictate a finding of "disabled" for the Plaintiff based on his age (closely approaching

17    advanced age as of March 8, 2012 when he turned 50), education (completion of high

18    ///

19    ///

20

21

22    [3] The Commissioner contends the Plaintiff did not finish treatment due to

23    his incarceration for driving without a license.  (ECF No. 16 at p. 8).  The record

24    does not support this contention.  Plaintiff's hearing testimony indicates he was

25    incarcerated from October through December of **2013** (the "last year" before the

26    year of the administrative hearing), not 2012.  (AR at pp. 42-43).  Plaintiff worked

27    for Labor Ready starting in February/March 2013, prior to his incarceration.  (AR

28    at pp. 43-44; pp. 213-248).

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 15**

1  school and ability to communicate in English), and the skills from his previous semi-

2  skilled work as a material handler not being transferable to other work.[4]

3

4  **CONCLUSION**

5  Plaintiff's Motion For Summary Judgment (ECF No. 15) is **GRANTED** and

6  Defendant's Motion For Summary Judgment (ECF No. 16) is **DENIED**.   The

7  Commissioner's decision is **REVERSED**.  Pursuant to sentence four of 42 U.S.C.

8  §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for an

9  immediate award of disability benefits for the period from October 1, 2011 to

10  December 31, 2012.  An application for attorney fees may be filed by separate

11  motion.

12  **IT IS SO ORDERED.**    The District Executive shall enter judgment

13  accordingly and forward copies of the judgment and this order to counsel of record.

14  **DATED** this ___18th___ day of November, 2016.

15

16  *s/Lonny R. Suko*

17  _____
LONNY R. SUKO

18  Senior United States District Judge

19

20

21

22

23

24

25

26

27  _____

28  [4]  See testimony of vocational expert, AR at pp. 67-69.

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 16**